Donahue, J.
On the 6th day of August, 1912, Paul J. Poage filed in this court a petition for a writ of habeas corpus, averring that he was unlawfully restrained of his liberty by Thomas PI. Neal, sheriff of Lawrence county, Ohio. On this petition a writ of habeas corpus issued and pursuant to the command of the same Thomas PI. Neal, sheriff of Lawrence county, Ohio, produced the body of Paul J. Poage and at the same time filed an answer stating that his authority for restraining Poage of his liberty. This petition of Poage and the answer of the sheriff thereto raise the questions submitted to this court for determination, and therefore it is necessary to a discussion of these questions to quote largely therefrom.
Paul J. Poage was indicted by the grand jury of Lawrence county, Ohio, at the May term, 1912, *77 of the court of common pleas of that county, for failing to provide his minor child, Sarah Eliza Poage, with a home, food and clothing. On this indictment a capias issued for the arrest of Poage and was placed in the hands of Thomas PI. Neal, sheriff of Lawrence county, who, in obedience to its commands, arrested the petitioner and now claims that he is legally in his custody as sheriff by virtue and authority of this warrant. The petition describes the indictment and the offense charged therein, and there is attached to the petition a copy of the capias issued thereon. The petition avers that the allegations and statements set forth in the' indictment upon which the order of arrest was issued are untrue in this:
“Your petitioner at all times prior to, as well as at this time, was and is a resident, inhabitant, citizen of and living in Ashland, Boyd county, and state of Kentucky, and at no time was your petitioner a resident, inhabitant, living in or a citizen of the state of Ohio, nor did your petitioner ever reside in or have his domicile in, or live in Lawrence county, or the state of Ohio, nor was he ever employed, nor did he ever stay in the state of Ohio, or within Lawrence county for any time at all other than a casual visitor to different portions of said state; and, that ever since your petitioner became of the age of 21 years, has been an elector of Boyd county, state of Kentucky, and is now and has been for more than two years last past the duly elected, qualified and acting clerk of the circuit court of said Boyd county, Kentucky.
*78 “Your petitioner further represents that on the sixth day of July, 1906, at Catlettsburg, state of Kentucky, he was married to Margaret Lena Poage, and immediately thereafter went to housekeeping in the city of Ashland, county of- Boyd and state of Kentucky, and that of said marriage Sarah Eliza Poage was born in said Ashland, Boyd county, Kentucky, approximately four years ago, it being the same child that your petitioner is charged with failing to support, etc., in said indictment upon which said capias was issued and your petitioner was arrested as hereinbefore set out; that said Margaret Lena Poage and your petitioner continuously kept house, and resided in said Ashland, Boyd county, Kentucky, up until the thirteenth day of July, 1911, at which time Margaret Lena Poage went to Ironton, Ohio, upon a visit, taking along with her their said child, Sarah Eliza Poage; that on or about the first day of November, 1911, said Margaret Lena Poage not having returned to her home in Ashland, Boyd county, Kentucky, indicated that she was not going to return to the state of Kentucky, and has ever since kept said child in Ironton, Ohio, against the wish, will and desire of your petitioner ; that said child, Sarah Eliza Poage, is a resident, citizen and is domiciled at the home of jmur petitioner in said Boyd county, Kentucky, and is not, and never was a resident or citizen of, or domiciled in said Lawrence county nor the state of Ohio; that - the indictment upon which said warrant was issued recited that your petitioner was late of said Lawrence county, Ohio, which recital *79 your petitioner avers is untrue in fact; that said indictment further recites that your petitioner did not furnish the necessary and proper home, care, food and clothing for said Sarah Eliza Poage, this allegation is also untrue in fact, as your petitioner has at all times had a home for said Sarah Eliza Poage in Ashland, Boyd county, state of Kentucky, and has at all times maintained a home, and has at this time such home, and is ready, willing and anxious to care for in every way, educate, clothe and rear said Sarah Eliza Poage in such a way as will be morally advantageous to said child, all of which he prepared to do at her home in Ashland, Boyd county, Kentucky.
“Your petitioner further says that the custody, care and control of said child, Sarah Eliza Poage, has never been taken from that of your petitioner, nor has there been any decree of any court separating your petitioner from Margaret Lena Poage, nor any decree of any court relating to the care, custody and control of said child.”
The petitioner claims that by reason of these facts the court of common pleas of Lawrence county has and had no jurisdiction over his person, and no right, jurisdiction or authority in law to arrest or permit the petitioner to be indicted for such offense, and that if any laws of the state provide for or permit such indictment, the same are unconstitutional.
For answer to this petition, the sheriff avers the finding of the indictment, the issuing of the capias, and the arrest of the petitioner thereon, and further alleges that:
*80 “The said Paul J. Poage has been voluntarily in the state of Ohio, and in the county of Lawrence and in the city of Ironton, within the time laid in the indictment for the commission of this crime. And has within said time visited his child, Sarah Eliza Poage, at the home of William J. Bester, the grandfather of said child, in Ironton, Lawrence county, Ohio.
“The respondent further says that Margaret Lena Poage, wife of the said Paul J. Poage, together with Sarah Eliza Poage, daughter of the said Margaret Poage, were compelled by the said Paul J. Poage to leave his home in Ashland, Boyd county, Kentucky, on July 9, 1911, and the said Paul J. Poage refused at that time to longer support both Margaret Lena Poage and Sarah Eliza Poage, and by his actions and words compelled the said Marg'aret Lena Poage together with her daughter, Sarah Eliza Poage, to return to her fathér’s home in Ironton, Lawrence county, Ohio, where they have ever since resided. The respondent further says that on July 9, 1911, the said Paul J. Poage abandoned his child, Sarah Eliza Poage, and has ever since that date neglected and refused to furnish said child with a home, food, care and clothing.
“Your respondent denies that Sarah Eliza Poage is a resident, citizen and is domiciled at the home of your petitioner in the said Boyd county, Kentucky, and denies that the said child never was a resident or citizen of Lawrence county, state of Ohio, but says that since July 9, 1911, continuously until the present date the said Sarah Eliza Poage *81 is and has been a resident citizen and domiciled at Lawrence county, state of Ohio, and that during the entire time laid in the indictment herein, was living with her mother at the home of her grandfather, William J. Bester, in Ironton, Lawrence county, Ohio.
“Your respondent denies that during the time laid in the indictment, the petitioner herein had a home for the said Sarah Eliza Poage in Ashland, Boyd county, Kentucky, or anywhere else, and denies that during the time laid in the indictment he was ready, willing and anxious to care in every way, educate, clothe and rear the said Sarah Eliza Poage in such a way as will be morally advantageous to said child or in any other way, either in Ashland, Boyd county, Kentucky, or any other place.”
These pleadings raise important questions of fact that this court is not now called upon to determine. In the case of State of Ohio v. Ewers, 76 Ohio St., 563, this court overruled the exceptions of the prosecuting attorney of Williams county to the ruling of the court of common pleas of that county, that the defendant was not guilty of an offense similar to the one charged in this indictment, because he had resided in the state of Indiana during all the time covered by the indictment. Following the decision in that case the law of this state was amended April 28, 1908 (99 O. L., 228). Section 2 of the amended act declared that: “The offense shall be held to have been committed in any county in this state in which such child or children or pregnant woman *82 may be at the time the complaint is made.” Section 4 of the same act reads as follows: “Citizenship once acquired in this -state of any father or mother of any legitimate or illegitimate child living in this state, shall be deemed for ■ all the purposes of this act to continue until such child shall have arrived at the age of sixteen years, provided said child so long continues to live in this state.” Subsequent to this amendment William Sanner was indicted by the grand jury of Allen county for refusing, failing and neglecting to provide for his minor children living in Allen county. That case came to this court and is reported in 81 Ohio St., 394. The sole question there presented by the.record was raised by a demurrer to the indictment, it being claimed that the indictment was insufficient because it did not aver that the defendant was living in this state any part of the time covered by the indictment. Counsel for Sanner relied upon the case of State v. Ewers, supra. This court held that Section 2 and Section 4 of the amendment of April 28, 1908, materially changed the law of this state in that respect, and that such an averment is not now necessary. William Sanner had been a resident of the state of Ohio; his children were begotten and born in this state; he had abandoned his family and was then residing in Indiana. Section 4 of the amendment was passed to cover exactly such a state of facts. The syllabus in that case states the law of Ohio with reference to the facts upon which it is predicated. It must be remembered that every *83 syllabus that is written must be read in view of the facts found in the case decided, for it is not possible for a court to comprehend in every syllabus all the many phases of facts that may arise in other litigations touching similar transactions. It is undoubtedly the law, as there held, that as to some crimes the physical presence of the accused at the place where the crime is committed is not essential to his guilt, and since the amendment of April 28, 1908, it is also the law of this state that a parent may be guilty of the crime of failing to provide for his minor children, although he is residing in another state during the time laid in the indictment and that the venue of the crime is properly laid in the county where the child is domiciled when the complaint is made. Because this is true it by no means follows that the legislature of this state has the power and authority to control the domestic relations of citizens of another state not residing in this state and who never have resided in this state, or to compel by law the performance of any duties and obligations of parents to their minor children arising from the laws of this state when the legal residence of both parent and child is in another state, and where the defendant is not responsible either by acts of commission or omission for the child being temporarily in this state. The decision in the case of State v. Sanner, supra, has no application whatever to the state of facts presented by this petition in habeas corpus, further than it determines that it is not necessary to allege in the *84 indictment that the defendant was during the time covered by the indictment, or any part of it, a resident of this state.
Section 7996, General Code of Ohio, declares that: “The husband is the head of the family. ITe may choose any reasonable place or mode of living and the wife must conform thereto.” This statute means something, and all other legislation must be construed in the light of the rights, duties and authority of a husband so fixed and established by this law. If this defendant resided in Ohio, and if he had established a home for his wife and minor children, and his wife without any just cause therefor, and without his consent, and against his wishes and desires, abandoned this home, taking with her their minor children and refusing to permit them to return to the father and to the home provided by him for them, it is difficult to see how the father by mere neglect and failure to assert his legal right to the custody of his child or children would be guilty of an offense under this statute so long as the minor child is receiving from the mother, or ' from some other person at the request of the mother, all that a father is required to provide for it. Any such interpretation of this statute would make the provisions of Section 7996, General Code, absolutely nugatory and deprive the husband and father of all the right and authority given him thereby. If this is true with reference to a citizen of this state, it must follow that a citizen of another state who has never resided in this state, who was married and established a home for himself and *85 family in such other state, and still maintains such home, whose children were born in the state of which he is a citizen and elector, and who never was subject to the laws controlling- the domestic relations of this state and who has not sent his child into this state, or consented to its being brought here, cannot upon such state of facts be convicted of an offense under this statute. This statement of the law, however, is not subject to the construction that the citizen of another state who has never resided in this state cannot be guilty of an offense under our laws requiring parents to support their minor children.
Notwithstanding that a parent may never have been a resident of this state, and that he has always been a citizen of another state, yet the circumstances might be such as to make him amenable to our laws. It is unnecessary to imagine such a state of affairs as would authorize the prosecution of a citizen of another state for failure to provide for minor children living and being in this state. It is sufficient to say that it must at least appear either that he has brought, or compelled them to come into this state and then abandoned them, or that having been brought into this state by others, even against his will, they were then abandoned and permitted to become homeless and unprovided for. Clearly, in such case it would be the duty of the father to assert his legal right to their care and custody, and provide them with a home, food, shelter and clothing, and his failure to do so would be an offense against our laws. This legislation is for the benefit of the *86 child. It is passed for the purpose of enforcing the natural duties of parents to their children. This duty is owing to the child wherever the parent entitled to its control and custody places it, or wherever in disregard of his parental duty and obligation, he permits it to remain unprovided for. So that citizens of another state cannot permit their children to become objects of charity in this state and defend against a prosecution under our laws to compel parents to provide for their minor children by the plea that they are not citizens of this state; but where such child is brought into this state against the will and consent of the parent and is provided with a suitable home, food, shelter and clothing by those responsible for bringing it into the state, or by others procured by them to furnish the same, it is then no concern of our state and no offense against our laws. If the averments of this petition are true, the legal residence of this child named in the indictment is still Ashland, Kentucky, and this petitioner has neither by act of commission or omission offended against the law of this state. This court, however, is not the forum to hear and determine the truth or falsity of the averments of this petition. The common pleas court of Lawrence county has jurisdiction of the offense charged. In the case of Ex parte Bushnell, 8 Ohio St., 599, this court declared that: “Where a court of original jurisdiction and legally competent to determine its own jurisdiction, has acquired jurisdiction, de facto, over person or subject-matter, it is a rule, founded upon comity between judicial tribunals, that no *87 other court will interfere with, or seek to arrest the action of the court in which, and while, the case is still pending and undetermined.” Section 12165, General Code, provides: “If it appears that the person alleged to be restrained of his liberty, is in custody of an officer under process issued by a court or magistrate, or by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to issue the process or render the judgment or make the order, the writ shall not be allowed.” The answer discloses just such a state of facts as are provided for by this section. If it were the law that no citizen of another state could be guilty of an offense under this act to compel parents to maintain their children, then the applicant would be entitled to his discharge, but if there are any circumstances under which a citizen of another state may be guilty of such an offense, that is the end of the inquiry, and the' defendant will be remanded to the court having acquired jurisdiction of the matter and compelled to make his defense in the usual and ordinary way. This same question was before this court in the case of Burns v. Tarbox, Sheriff, 76 Ohio St., 520. The facts in that case were very similar to the facts in the case at bar, and it was sought in that case to have the defendant discharged on a writ of habeas corpus upon allegations very similar to the allegations in this petition. In fact it involved the same principle and it was there held that: “The evidence offered was not competent to work the discharge of Burns on habeas corpus, the same being competent and *88 appropriate as a part of his defense to the charge before said mayor.”
Therefore, the petition of the applicant is dismissed at his costs and he is remanded to the custody of the sheriff.

Petition dismissed.

Davis, C. J., Spear, Johnson and O’Hara, JJ., concur.
Shauck, J., concurs in the second paragraph of the syllabus and in the judgment.